IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**BRIAN B.,**

      **Plaintiff,**

v.                                          Case No.: 3:25-cv-00022

**FRANK BISIGNANO,**
**Commissioner of the**
**Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration *(*hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are the parties' briefs seeking judgment on the pleadings. (ECF Nos. 6, 7).

The undersigned fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 6); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF

1

No. 7); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, with prejudice, and removed from the docket of the Court.

### I.    Procedural History

In August 2021, Brian B. ("Claimant") filed for DIB and SSI, alleging a disability onset date of April 1, 2019, due to being "mostly blind" in his left eye after a piece of steel "went through [it]," and he suffered a stroke, as well as glaucoma, light sensitivity, and an oblong pupil in his left eye. (Tr. at 197-212, 227). In addition, Claimant alleged disability due to the fact that he could not straighten his left arm, he had "busted" discs in his back, he could not sleep, and he suffered from anxiety and depression. (Tr. at 227). After his applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held before the Honorable M. Drew Crislip, Administrative Law Judge (the "ALJ"). (Tr. at 105-123). By written decision dated August 8, 2023, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 37-62). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Claimant's request for review. (Tr. at 1-7).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF No. 5). Claimant filed a Brief, requesting remand of the Commissioner's decision, and the Commissioner filed a Brief in Support of Defendant's Decision to which Claimant filed a reply. (ECF Nos. 6, 7, 8). Thus, the matter is ripe for resolution.

## II.   Claimant's Background

Claimant was 42 years old on his alleged onset date and 46 years old on the date of the ALJ's decision. (Tr. at 28). He communicates in English, has a high school education, and previously worked as a bulldozer operator. (Tr. at 56, 226, 228).

## III.   Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the

3

measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from

4

the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id*. §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id*. §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id*. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id*. §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through June 30, 2023. (Tr. at 20, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since April 1, 2019, the alleged disability onset date. (*Id*., Finding No. 2).

5

At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease (DDD) of the lumbar spine and visual disturbance of the left eye. (Tr. at 21, Finding No. 3). The ALJ did not find adequate evidence to establish Claimant's alleged osteoarthritis of the left upper extremity, but nonetheless included an RFC restriction to account for it. (Tr. at 21). The ALJ concluded that Claimant's medically determinable mental impairments of depressive disorder, anxiety disorder, somatic symptom disorder, and substance abuse/alcohol abuse disorder were non-severe. (Tr. at 22).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 23, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity (RFC) to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; and stand and/or walk for six hours in an eight-hour workday. He must alternate from sitting to standing or walking for two to three minutes every hour and from standing or walking to sitting for 2-3 minutes each ½ hour, always with the capacity to remain on task during position changes, some of which would be covered by typical work breaks or time off task there beyond. He can occasionally operate foot controls. He can occasionally perform overhead reaching with the left upper extremity and can frequently perform reaching in other directions with the left upper extremity. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance (navigate uneven or slippery terrain), stoop, and kneel. He can never crouch and never crawl. He cannot perform duties requiring near or far acuity with the left eye; he effectively is blind in the left eye, but has no appreciable visual limitation in the right eye. He can never work at unprotected heights, in proximity to moving mechanical parts of dangerous machinery, around temperature extremes, and around vibration. He can occasionally work in weather, humidity/wetness, around pulmonary irritants, and in the operation of a motorized vehicle. In addition to normal breaks, he would be off task 5 percent of the time in an 8-hour workday. Due primarily to distractions of physical symptoms, he can perform only tasks not requiring high production rate or a fast pace, such as quota-driven or

assembly-line work.

(Tr. at 24-27, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 27-28, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 28-29, Findings 7 through 10). Considering the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a final assembler (DOT 713.687-018), inspector (DOT 669.687-014), and a bonder machine tender (DOT 726.685-066). (Tr. at 28-29, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 29, Finding No. 11).

### IV. Claimant's Challenges to the Commissioner's Decision

Claimant argues (1) that the ALJ's hypothetical question to the VE did not include all of his RFC limitations, specifically the restriction that he is effectively blind in his left eye, and (2) the ALJ did not resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") regarding visual acuity. Thus, Claimant contends that it was error for the ALJ to rely on the VE's testimony that he can perform other work at step five of the sequential evaluation. (ECF No. 6). In response, the Commissioner contends that there was no difference between the VE hypothetical and RFC finding, and any apparent conflicts between the VE's testimony and the DOT were resolved. (ECF No. 7).

### V. Relevant Evidence

The undersigned has reviewed all of the evidence before the Court. The following

evidence is most relevant to the issues in dispute.

### A. Treatment Records

Steven Wilson, O.D., examined Claimant on July 28, 2022. (Tr. at 315). Claimant had a history of surgery on his left eye in 2002 after a "piece of metal" went into it, which made him suffer an eye stroke and traumatic glaucoma. (Tr. at 315). Examination confirmed Claimant's superior field defect, and his superior pupil was peaked in his left eye; the lens and capsule had been removed. (Tr. at 316, 317). Repair of the previous retinal tear was evident, and Claimant's left eye cup size was small, cut depth was shallow, and there was partial optic nerve atrophy secondary to trauma. (*Id.*). Claimant's uncorrected distance and near visual acuity of the left eye was hand motion only, but his bilateral corrected distance and near visual acuity was 20/20. (Tr. at 316). His diagnoses included abnormal pupil of left eye; bilateral dry eyes; corneal scar of left eye; aphakia of left eye with capsule removed; partial optic nerve atrophy post trauma of left eye; and traumatic glaucoma of left eye, mild state, stable; choroidal nervus of right eye, stable; retinal tear with prior retinal surgery of left eye, stable; temporal chorioretinal (CR) atrophy; hyperopia; astigmatism; and presbyopia. (Tr. at 317).

### B. Evaluations, Prior Administrative Findings, and Opinions

On October 19, 2021, Amy Wirts, M.D., a state agency medical consultant, opined based on her review of the record that Claimant was limited to medium exertion with frequent postural activities, except that Claimant could only occasionally climb ladders, ropes, or scaffolds; balance; and perform left eye near acuity, far acuity, and field of vision; and he should avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards. (Tr. at 67-68, 75-76). Rabah Boukhemis, M.D., affirmed Dr. Wirts' opinion on October 3, 2022. (Tr. at 84, 91).

8

During the administrative hearing on October 11, 2023, Gilberto Munoz, M.D., testified the Claimant was blind in his left eye, among other impairments. (Tr. at 45). He opined that Claimant could perform light exertional work involving frequent postural activities, except Claimant could never climb ladders, ropes, or scaffolds or work at unprotected heights or around heavy machinery. (*Id.*).

### *C. Claimant's Testimony*

At the hearing, Claimant testified that he was blind in his left eye, and he relied on his right eye, which became fatigued after 15 to 20 minutes. (Tr. at 50-51). His vision affected his balance and depth perception. (Tr. at 52-53).

## VI. Standard of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the

9

decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. Discussion

Claimant challenges the ALJ's step five analysis of his visual impairment. Specifically, he argues that the ALJ did not include his RFC restriction of left eye blindness in the VE hypothetical, nor did the ALJ resolve a conflict between the VE's testimony and the DOT. As previously noted, the burden is on the claimant in steps one through four of the sequential evaluation. If a claimant establishes at step four that his or her impairments prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability. The burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

To answer the final question—whether sufficient other work exists for the claimant in the national economy—the ALJ relies primarily on the DOT. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). The ALJ may also use a VE "to address complex aspects of the employment determination, including the expert's observations

of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* (citing SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000), at *2). In order for a VE's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993); *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989).

To frame a proper hypothetical question, the ALJ must first translate the claimant's physical and mental impairments into an RFC that is supported by the evidence; one which adequately reflects the limitations imposed by the claimant's impairments. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the [VE]." *Fisher v. Barnhart,* 181 F. App'x 359, 364 (4th Cir. 2006). A hypothetical question will be "unimpeachable if it adequately reflects a [RFC] for which the ALJ had sufficient evidence." *Id.* (citing *Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (noting that hypothetical question "need only reflect those impairments supported by the record").

However, "[t]he Commissioner can show that the claimant is not disabled only if the [VE]'s testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan v. Barnhart*, 142 F. App'x 716, 720-21 (4th Cir. 2005). Given that a VE's testimony can sometimes conflict with the DOT, the SSA promulgated Social Security Ruling ("SSR") 00-4p to clarify that an ALJ must inquire on the record whether the VE's testimony conflicts with the DOT and "elicit a reasonable explanation for" and "resolve" conflicts between the VE's testimony before relying on the VE's testimony to support a

determination about whether the claimant is disabled. SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000), at *2.

An ALJ has not fulfilled his or her affirmative duty merely because the VE responds "yes" when asked if his or her testimony is consistent with the DOT. *Pearson*, 810 F.3d at 208. The ALJ must independently identify and resolve any obvious or apparent conflicts between the VE's testimony and the DOT. *Id.* at 208-209. In many cases, the VE's testimony may only appear to conflict with the DOT, and the VE may be able to explain that, in fact, no conflict exists. *Id.* at 209. If the ALJ does not elicit this explanation, then the VE's testimony cannot provide substantial evidence to support the ALJ's decision. *Id.* A VE's testimony that apparently conflicts with the DOT can only provide substantial evidence if the ALJ has received an explanation from the VE and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the DOT. *Id.* at 209-210.

Here, Claimant notes that the ALJ assessed that he "cannot perform duties requiring near or far acuity with the left eye; he effectively is blind in the left eye, but has no appreciable visual limitation in the right eye." (Tr. at 22). However, at step five, the ALJ posed a hypothetical to the VE regarding a person that "cannot perform duties requiring near or far acuity with the left eye. No visual limitation on the right eye, however." (Tr. at 56-57). Thus, the hypothetical did not include the portion of Claimant's RFC that he is "effectively blind in the left eye."

The Commissioner maintains that it was a distinction without a difference because being blind in the left eye, by definition, means total loss of visual acuity in that eye. (ECF No. 7 at 1). According to the Commissioner, the statement that Claimant is effectively blind in the left eye did not add any restriction, but merely clarified that,

although Claimant is blind in the left eye, he has no appreciable visual limitation in his right eye. (*Id*. at 6). In reply, Claimant argues that the loss of near and far visual acuity is not synonymous with blindness, as shown by the fact that not all people with loss of visual acuity are blind. (ECF No. 8 at 2). Claimant indicates that blindness is a more severe limitation, and if the VE had been presented with the limitation that he is effectively blind in the left eye, it reasonably could have impacted the VE's testimony regarding whether he could perform the step five jobs.

The undersigned finds that it is unclear how the ALJ defines "effectively blind." Perhaps, in line with the Commissioner's suggestion, the ALJ was simply using the phrase "effectively blind" to articulate that, although Claimant cannot perform duties requiring near or far acuity with the left eye, he has no limitations in his right eye. This is a possible interpretation, but it is equally plausible to accept Claimant's view that blindness is something more than just lack of near and far visual acuity. The ambiguity, compounded by an apparent conflict detailed below, renders the decision unsupported by substantial evidence.

The ALJ found at step five, based on the VE's testimony, that Claimant could perform three jobs: final assembler (DOT 713.687-018); inspector (DOT 669.687-014); and bonder machine tender (DOT 726.685-066. The DOT lists that all three jobs require frequent near acuity. Final Assembler, 1991 WL 679271; Dowel Inspector, 1991 WL 686074; Bonder, Semiconductor, 1991 WL 679631. Claimant's RFC, and the hypothetical presented to the VE were restricted to, *inter alia*, no duties requiring near acuity with the left eye. There was thus an apparent conflict between the VE's testimony that Claimant could perform these jobs and the DOT's description that the jobs require frequent near acuity.

There is simply no indication in the decision that the ALJ identified, much less resolved, the apparent conflict required by law. The Commissioner argues that it was sufficient that the ALJ generally asked about potential conflicts between the VE's testimony and the DOT, and Claimant's attorney asked the VE regarding the inspector position. (ECF No. 7 at 9-10). However, as stated, it is not enough that a VE denies that a conflict exists. The ALJ was required to articulate a reasonable explanation for his findings. For instance, the ALJ might have concluded that Claimant could perform the step five jobs because his unaffected right eye compensated for the lack of visual acuity in his left eye or he worked for many years after losing his left eye vision. However, no such explanation was provided, and the Court cannot speculate regarding his reasoning or substitute *post hoc* rationale to support the findings.

The ALJ's failure to resolve the apparent conflict certainly cannot be considered harmless error. Visual acuity was critical to the jobs that the ALJ found that Claimant could perform. A final assembler "[a]ttaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes. Inserts and tightens screws, using screwdriver." Final Assembler, 1991 WL 679271. A dowel inspector "[i]nspects dowel pins for flaws, such as square ends, knots, or splits, and discards defective dowels." Dowel Inspector, 1991 WL 686074. A bonder, among other things, "[m]ounts spool of wire onto holder and inserts wire end through guides, using tweezers." Bonder, Semiconductor, 1991 WL 679631. It is a matter of common sense, and clearly spelled out in the DOT, that near visual acuity was integral to performing that work. While Claimant may be able to do the jobs with near visual acuity in one eye, the apparent conflict clearly warranted discussion by the ALJ.

Therefore, the undersigned **FINDS** that the matter must be remanded for the ALJ to reconsider or elaborate upon his step five findings concerning Claimant's visual impairment. *See, e.g., Camp v. Comm'r of Soc. Sec. Admin.*, No. 9:19-CV-02194-MHC, 2021 WL 9583901, at *6 (D.S.C. Feb. 9, 2021) (remanding where ALJ did not discuss or resolve apparent conflict between the VE's testimony that someone with claimant's RFC, including having one eye, could work as an assembler, trimmer, or bench assembler, which require frequent or constant near acuity according to the DOT); *Green v. Berryhill*, No. CIV-15-454-SPS, 2017 WL 1076335, at *4 (E.D. Okla. Mar. 22, 2017) (remanding where the ALJ failed to resolve an apparent conflict between VE's testimony that the claimant could perform jobs, such as 726.685-066 (semi-conductor bonder), although the claimant had loss of vision in one eye, which required the other eye to compensate, and the DOT stated that the job requires frequent near acuity); *Rodrick T. v. Kijakazi*, No. 22-CV-6482DGL, 2023 WL 6647976, at *2 (W.D.N.Y. Oct. 12, 2023) (remanding where the ALJ did not resolve conflict between the claimant's monocular vision and jobs which require frequent near acuity).

## VIII. Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 6), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 7); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further

administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED: October 28, 2025**



_____
Joseph K. Reeder
United States Magistrate Judge